IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 1:11-CV-02753-WSD |
| BILLION INTERNATIONAL | : | |
| TRADING, INC., | : | |
| | : | |
| Defendant. | : | |

RESPONSE TO DEFENDANT'S
MOTION TO SET ASIDE JUDGMENT

Defendant's motion to dismiss pursuant to Rule 60(b)(4) should be denied because the United States has satisfied the Georgia long-arm statute and constitutional requirements for exercise of personal jurisdiction in this matter.

FACTUAL BACKGROUND

On September 28, 2011, this Court entered a default judgment against the defendant, Billion International Trading, Inc.  The pertinent jurisdictional facts averred in the complaint of August 18, 2011, are as follows:

On or about December 19, 2008, Billion International Trading Inc. (Billion International), through its broker SBIS Inc., applied for entry and immediate delivery of a shipment of sports caps with a declared value of $7,056 imported from China to the

Port of Atlanta, Georgia.  Complaint ¶ 10.  Billion International was listed as the buyer, ultimate consignee and importer of record on Customs Entry No. WIB-1219-11-5.  Complaint ¶ 11.  The Commercial Invoice and Packing List for the shipment identified the seller as a factory located in China and the buyer as Billion International Trading Inc. and described the contents as 140 cartons containing 20,160 acrylic and wool men's sports caps with a purchase price of $7,056.  Complaint ¶ 12.  The caps were found to be counterfeit upon inspection.  Complaint ¶ 13.  United States Customs and Border Protection of the Department of Homeland Security (CBP) seized the counterfeit goods, 21,160 caps, at the Port of Atlanta, Georgia, on or about December 22, 2008.  Complaint ¶ 18.

In its Rule 60(b)(4) motion, Billion admits the following jurisdictional facts: Billion "opened negotiations" with Tanu (USA) Inc. and Universal Sportswear Inc. of Atlanta, Georgia.  Memorandum at p. 3 and attached declaration of Emma Chen ¶ 5.  The owner of Billion International, Inc., and Declarant to the defendant's motion, Emma Chen knew Tanu and Universal to be wholesalers and retailers of big and tall t-shirts to customers in Atlanta, Georgia.  Id.  The negotiations led to a contract for the sale of a minimum order of 20,000 caps with a stylized "A" logo on the crown.  Memorandum at p.3; Declaration ¶ 6.  As a

2

result of the contract, Billion International arranged for the manufacture and purchase of caps from the Chinese company Yangzhou Yingmei Caps Factory, Ltd. Memorandum at p. 3; Declaration ¶ 7.

The shipping documents identified Billion International as the buyer, ultimate consignee and importer of record. <u>Id</u>. Although Billion contends that the ultimate buyer was Universal, it does not dispute that it was a consignee and an importer of record of the counterfeit goods. <u>Id</u>. Billion International also does not dispute that the caps were seized as counterfeit at the Port of Atlanta, Georgia. Nor does it dispute that the caps were valued at $7,056 as part of the negotiated contract. And in fact, Billion admits that it was paid $33,860 for the transaction. Declaration ¶ 9. Further, defendant admits that it was properly served. Memorandum at ¶ 4.

ARGUMENT

A.  <u>General Legal Standards</u>

Federal Rule of Civil Procedure 60(b)(4) permits a defendant to move for relief from a final judgment on the grounds that the judgment is void. Fed. R. Civ. P. 60(b)(4). Rule 60(b)(4) allows a litigant - even one who does not initially appear - to collaterally attack a judgment on the ground that it is void due to lack of personal jurisdiction. <u>Baragona v. Kuwait & Gulf Link</u>

3

Transport Co., 594 F.3d 852, 854 (11th Cir. 2010) ("A defendant normally only waives a personal jurisdiction defense if he or she has entered an appearance or was involved in overt wrongdoing to deceive the court and avoid service of process.").

Nevertheless, the burden of proof in attacking a judgment after a default rests with the defendant. See Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 154 (5th Cir. 1974). The "burden of undermining (the judgment) rests heavily upon the assailant." Hazen Research, 497 F.2d at 154, citing Williams v. North Carolina, 325 U.S. 226, 233-234 (1945).  While the United States as the plaintiff bears the ultimate burden of establishing personal jurisdiction, the Court must construe all reasonable inferences in favor of the United States.  Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988); see also Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990); Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir. 2010). This court must construe the allegations in the complaint as true, to the extent they are uncontroverted by the defendant's affidavit.  Morris, 843 F.2d at 492.[1]

---

[1]    Indeed, where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc. 593 F.3d 1249, 1257 (11th Cir. 2010), citing Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

4

In the Eleventh Circuit, a determination of personal jurisdiction requires consideration of both the Georgia long-arm statute and the Due Process Clause of the United States Constitution.  Diamond Crystal Brands, Inc., 593 F.3d at 1259; Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, OK, 245 F.Supp. 2d 1248, 1253 (N.D.Ga. 2002).

B.   Long Arm Jurisdiction

As long as the plaintiff satisfies one independent prong of the Georgia long-arm statute, it has satisfied its obligations under the Georgia long-arm statute.  Diamond Crystal, 593 F.3d at 1260.  The United States relies on the first prong of the Georgia long-arm statute for jurisdiction in this case.  It provides in pertinent part that a Georgia court

> may exercise personal jurisdiction over any nonresident ...
> as to a cause of action arising from any of the acts,
> omissions, ownership, use, or possession enumerated in this
> Code section, in the same manner as if he were a resident of
> the state, if in person or through an agent, he:
>
>    (1) Transacts any business within this state;
>
>        * * *

---

However, the United States in this case does not need to rely on disputed evidence, as explained below, because the uncontroverted facts - including defendant's own admissions - establish personal jurisdiction.

O.C.G.A. § 9-10-91.  The "transacts any business" prong of this statute permits the exercise of jurisdiction to the fullest extent permitted by the United States Constitution.  Cf. Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank, 279 Ga. 672, 620 S.E.2d 352, 354 (Ga. 2005).

Long-arm jurisdiction under the "transacts any business" prong depends on the doing of some act or consummation of some transaction by the defendant in the state.  Diamond Crystal Brands Inc., 593 F.3d at 1260.  The full three-part test set forth in Aero Toy Store is as follows:

> Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

Aero Toy Store, LLC v. Grieves, 279 Ga. App. 515, 631 S.E.2d 734, 737 (2006) (quoting Robertson v. CRI, Inc., 267 Ga.App. 757, 601 S.E.2d 163, 166 (Ga. Ct. App. 2004)).  To satisfy this prong, a defendant need not physically enter the state.  As a result, a nonresident's mail, telephone calls, and other "intangible" acts, though occurring while the defendant is physically outside of Georgia, must be considered.  Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d at 1264, citing Innovative

6

<u>Clinical</u>, 620 S.E.2d at 355-56.

The factual allegations and admissions of Billion International establish personal jurisdiction under the first "transacts any business" prong of Georgia's long-arm statute because it purposely transacted a business deal with a Georgia customers[2] that resulted in the shipment of goods to the Port of Atlanta, which are the subject of this cause of action.

This Court's decision in <u>Curtis Investment Co., LLC v. Bayerische Hypo-Und Vereinsbank</u>, 2007 WL 4564133 (N.D. Ga. Dec. 20, 2007), provides guidance in this case.  In <u>Curtis Investment Co.</u>, (N.D. Ga. Dec. 20, 2007), this court held that specific, "transacts any business" jurisdiction was established by the mailing of an opinion letter by a law firm to a Georgia client, where the letter was directly related to the cause of action, and the law firm had accepted payment for the service of providing the letter.   2007 WL 4564133 at *7.

As in <u>Curtis Investment</u>, defendant purposely took steps to engage in a business transaction in Georgia by opening negotiations with Georgia companies/customers and transacting the

---

[2]     Although Billion International acknowledges that it opened negotiations with two Georgia companies, Tanu (USA) Inc., and Universal Sportswear Inc. Of Atlanta Georgia, it refers to the Georgia customers as a collective, single unit in its pleading.

delivery of goods to the Port of Atlanta, for which it received payment.  Billion International admits to having "opened negotiations" with two Georgia customers for a contract providing for the shipment of goods to the Port of Atlanta, Georgia. Declaration ¶ 5.  That Billion International used the telephone and fax to consummate the transaction does not insulate it from jurisdiction in Georgia.  A nonresident's mail, telephone calls, and other "intangible" acts, though occurring while the defendant is physically outside of Georgia, must be considered.  Diamond Crystal Brands, 593 F.3d at 1264.  Whether completed by use of the telephone or fax, the record establishes that Billion International engaged in a business transaction with Georgia companies for the shipment and delivery of a minimum order of 20,000 caps with a stylized "A" logo on the crown to the Port of Atlanta.  Declaration ¶¶ 6, 7.

Significantly, the shipment papers designated the Port of Atlanta, Georgia as the delivery location.  Billion International does not dispute that Atlanta was the designated delivery location and it admits to knowing that it was negotiating with Atlanta-based businesses, although it indicates that the shipment was arranged by a broker.  As in Diamond Crystal, Billion International should be found to have engaged in business in Atlanta by tendering shipment to this state even if a third-party was involved.  "[W]e have held that "designat[ing] certain

parties within the State of Georgia for receipt of the goods purchased under the contract" helps support a finding that a nonresident transacted business in Georgia, even if a third-party was involved. Diamond Crystal 593 F.3d at 1265, citing Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co., 623 F.2d 375, 379-380 (5th Cir. 1980). There is no dispute, and indeed, Billion International refers to the Georgia customers as the "ultimate buyer" in this transaction. Declaration ¶ 7.

Further, Billion International's transaction directly forms the basis of the cause of action. In this case, the United States seeks to hold Billion International accountable for a fine levied for the shipment of counterfeit goods into the Port of Atlanta. This is the very shipment for which Billion International admits that it "opened negotiations", communicated by telephone and fax, and arranged for the manufacture and purchase of the goods. This court noted that the exercise of specific jurisdiction over the law firm in Curtis Investment is consistent with the requirements of due process because the defendant "purposefully directed the opinion letter to [a party in Georgia] for the purpose of facilitating and advancing the * * * transaction." 2007 WL 4564133 at *7. The court concluded that "[t]his level of contact is sufficient for the Court to exercise jurisdiction over [the law firm] for claims relating to

9

the * * * transaction." <u>Id.</u>   Likewise, Billion International purposely advanced the shipment of counterfeit goods to the Port of Atlanta by opening negotiations with two Georgia companies and arranging for the manufacture and shipment of the goods.

Finally, Billion International admits to receiving payment for the shipment of goods resulting from the transaction.  It values its earnings from the transaction in the amount of $33,860.  Declaration ¶ 9.  Although Billion contends that this is a small portion of its overall earnings, the amount is not de minimus.  Even if not large by Billion's sales standards, the profit from the transaction with Georgia customers further establishes transaction jurisdiction in Georgia.

These factors distinguish this case from <u>Web.com, Inc. v. Go Daddy Group, Inc.</u>, Not Reported in F.Supp.2d, 2007 WL 7035105 (N.D. Ga. 2007), and <u>Jordan Outdoor Enterprises, Ltd. V. Trademark Global, Inc.</u>, Not Reported in F.Supp.2d, 2007 WL 247727 M.D.Ga. 2007 (Jan. 25, 2007) at *8.  In those cases, the courts found no factors to establish that defendants had purposefully directed their activities or targeted customers in Georgia.  The uncontroverted facts in this case show that Billion International engaged in a business transaction with Georgia companies for which it profited and which culminated in a shipment of goods to the Port of Atlanta.  Unlike <u>Jordan Outdoors</u>, where the only

10

shipment made to Georgia was made at the request of the plaintiff
for inspection for copyright infringement and not sale, the
shipment of counterfeit goods in this case was the culmination of
the business transaction between Billion International and its
Georgia customers.  <u>Jordan Outdoor Enterprises, Ltd. v. Trademark
Global, Inc., Trademarkcommerce.Com</u>, Not Reported in F.Supp.2d,
2007 WL 247727 (M.D. Ga. 2007) at 1.

    C.   <u>Constitutional Jurisdiction</u>

As for the constitutional requirement, due process
contemplates two types of jurisdiction over the person: general
or specific jurisdiction.  <u>Paul, Hastings</u>, 245 F.Supp. 2d at
1253; <u>see also Nippon Credit Bank, Ltd. v. Matthews</u>, 291 F.3d
738, 747 (11th Cir. 2002), <u>abrogated on other grounds by Diamond
Crystal Brands, Inc. v. Food Movers Intern., Inc.</u>, 593 F.3d 1249,
1258 (11th Cir. 2010).  For specific jurisdiction, due process
dictates that a nonresident defendant may be subject to personal
jurisdiction when "the defendant's conduct and connection with
the forum State are such that he should reasonably anticipate
being haled into court there." <u>Burger King Corp. v. Rudzewicz</u>,
471 U.S. 462, 474 (1985); <u>see also Sloss Indus. Corp. v. Eurisol</u>,
488 F.3d 922, 925 (11th Cir. 2007).

Jurisdiction must also comport with "traditional notions of
fair play and substantial justice," which involves consideration

11

of: (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate justice system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering substantive social policies. Meier ex rel. Meier v. Sun Intern. Hotels, Ltd. 288 F.3d 1264, 1276 (11th Cir. 2002).

The United States contends that there is specific jurisdiction resulting from the cause of action that forms the basis of this lawsuit, and that traditional notions of fair play and substantial justice are met. As explained above, the record establishes that Billion International engaged in a business transaction with Georgia customers for which it profited and which resulted in the shipment of goods to the customers through the Port of Atlanta, Georgia. Interestingly, Billion International does not contend that it did not know that the goods were to ship to Atlanta, and does not dispute that it was the consignee and importer of record, as reflected in the shipping documents. Id. at 3. Billion International admits that it "arranged for the manufacture and purchase of the caps." Declaration ¶ 7. And in fact, the transaction was consummated in Georgia as the caps were shipped to the Port of Atlanta as

12

contracted, and ultimately seized in Atlanta, Georgia.  Billion
International does not dispute that it was paid for shipping the
counterfeit caps to Atlanta.  Declaration ¶ 9.  These facts which
form the basis for the cause of action in this case for payment
of a fine for the importing of counterfeit baseball caps
establish personal jurisdiction under the minimum contacts
requirement of the Due Process Clause.

Consistent with the analysis of <u>Diamond Crystal Brands, Inc</u>.
and <u>Curtis Investment</u>, Billion's transaction forming the basis of
this cause of action also establishes personal jurisdiction over
Billion International, such that Billion International should
have reasonably anticipated being haled into court in Georgia as
a result of the shipment transaction.   This Court's exercise of
personal jurisdiction over Billion International for a fine
resulting from the importation of these counterfeit caps is
appropriate and comports to the traditional notions of fairness
and justice.

In specific jurisdiction cases, the "fair warning
requirement is satisfied if the defendant has purposefully
directed his activities at residents of the forum ... and the
litigation results from alleged injuries that arise out of or
relate to those activities." <u>Burger King</u>, 471 U.S. at 472-73
(internal quotations omitted).  Billion International purposely

13

availed itself of the benefits of transacting business in the
State of Georgia by entering a business transaction with a
Georgia customer for the shipment of over 20,000 counterfeit caps
into the Port of Atlanta.  It should have reasonably expected
that it could be hailed into this Court as a result.

CONCLUSION

For the reasons stated herein, the defendant's motion to dismiss pursuant to Rule 60(b)(4) should be denied.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


S/Lori M. Beranek
LORI M. BERANEK
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 053775
75 Spring Street, S.W.
600 Richard Russell Federal Building
Atlanta, Georgia 30303
Ph:  (404) 581-6350
Fax: (404) 581-6167
lori.beranek@usdoj.gov

15

CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing Response to
Defendant's Motion to Set Aside Judgment has been prepared in
Courier New, 12 point font, in accordance with Local Rules 5.1(C)
and 7.1(D).

This 14th day of December 2011.

S/ Lori M. Beranek
LORI M. BERANEK
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 053775
lori.beranek@usdoj.gov

16

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed the within and foregoing Response to Defendant's Motion to Set Aside Judgment with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorney of record:

    Thomas R. Williamson, III
    Christopher Huber


            This 14th day of December, 2011.


                    <u>s/Lori M. Beranek</u>
                    LORI M. BERANEK
                    Assistant U.S. Attorney
                    Georgia Bar No. 053775
                    lori.beranek@usdoj.gov